556

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan Humphrey Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9081 | **DATE** | 3/18/2004 |
| **CASE TITLE** | Breit & Johnson Sporting vs. John Ashcroft | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the foregoing reasons the court finds that the Attorney General's decision to revoke Breit & Johnson's license to sell firearms was authorized and therefore grants the Attorney General's motion for summary judgment (#12). This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 19 2004 | |
| | Notified counsel by telephone. | date docketed | 32 |
| ✓ | Docketing to mail notices. | JS | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TP | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BREIT & JOHNSON SPORTING )
GOODS, INC., an Illinois Corporation, )
)
      Plaintiff, )
) No. 01 C 9081
v. ) Judge Joan H. Lefkow
)
JOHN ASHCROFT, Attorney General, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

This is an action brought under the Gun Control Act, 18 U.S.C. § 923(f)(3), to review the decision of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") to revoke the federal license to sell firearms of plaintiff, Breit & Johnson Sporting Goods, Inc. ("Breit & Johnson"). Before the court is defendant's motion for summary judgment. For the reasons stated below, the court grants the motion.

### Standard of Review

Section 923(f)(3) of the Gun Control Act permits a party whose license to sell firearms has been revoked by ATF to obtain "de novo judicial review" of the revocation and, "[i]f the court decides that the Attorney General was not authorized to . . . revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court." 18 U.S.C. § 923(f)(3). Under § 923(f)(3), the district court may only determine whether the Attorney General's decision was "authorized;" the selection of the penalty is a matter within the discretion of the Attorney General. *Stein's Inc.* v. *Blumenthal*, 649 F.2d 463, 464 n.2 (7th Cir. 1980). The Attorney General's decision may be upheld if the court

concludes, in its own judgment, that the evidence supporting the Attorney General's decision is "substantial." *Id.*

"De novo review" may be confined to the administrative record or may be supplemented by the admission of additional evidence.[1] In either event, although the district court need not accord any particular weight to the Attorney General's findings and decision, it may, in the exercise of its discretion, accord them such weight as it believes they deserve. *Stein's*, 649 F.2d at 467. Absent genuine issues of material fact, a court may properly grant summary judgment without an evidentiary hearing. *Cucchiara v. Secretary of the Treasury*, 652 F.2d 28, 30 n. 1 (9th Cir. 1981).

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v.*

---

[1] Ignoring clearly binding precedent, Breit & Johnson argues that the court should "grant Breit & Johnson a trial de novo." In support, Breit & Johnson cites a 1970 case from the central district of California, *Weidner v. Kennedy*, 309 F. Supp. 1018 (C.D. Cal., 1970). As *Stein's* makes clear, "there is a difference between the 'de novo review' required by 18 U.S.C. § 923(f)(3) and 'trial de novo.' . . . Considerations of judicial economy suggest that trial anew of factual matters already litigated should be avoided unless substantial doubt infects the agency's findings of fact." 649 F.2d at 466. Breit & Johnson have done nothing to show that "substantial doubt infects the agency's findings of fact." Breit & Johnson admits 40 of defendant's 48 statements of fact. Thus, the court conducts this review in accordance with the standards outlined in this section.

2

*Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Facts**

Breit & Johnson Sporting Goods Company, Inc. ("Breit & Johnson") has been in business as a sporting goods store since approximately 1945. (Def. L.R. 56.1 ¶ 1.) The store sells a variety of sporting goods, including baseball, football, and hockey equipment, and it outfits teams with uniforms for these sports. (*Id.* ¶ 2.) It also sells firearms. (*Id.* ¶ 3.)

Breit & Johnson is organized as a corporation. (*Id.* ¶ 4.) Sid Breit is the corporate president and store owner. (*Id.* ¶ 5.) His son, Mark Breit, is the corporate vice president and has been working at the store full time since 1973. (*Id.* ¶ 6.) Breit & Johnson has been licensed to sell firearms since at least 1972. (*Id.* ¶ 7.) Mark Breit has been selling guns at Breit & Johnson since the mid- to late-1970s, and he is the person who runs the store today. (*Id.* ¶ 8-9.)

ATF has inspected Breit & Johnson on numerous occasions since 1977. (*Id.* ¶ 10.) Full compliance inspections of Breit & Johnson in 1977, 1978, 1994, and 1998 revealed numerous violations of the Gun Control Act and the regulations promulgated under it. (*Id.* ¶ 11.) At each full compliance inspection, ATF noted the same types of violations. (*Id.* ¶ 12.) Most commonly, ATF noted that Breit & Johnson (1) failed to ensure proper completion of Firearms Transaction Records, Forms 4473[2], as required by 27 C.F.R. § 178.124, and (2) failed to accurately maintain

---

[2] ATF uses Form 4473 to record identifying information about gun purchasers, to facilitate the tracing of firearms involved in crimes, and to prevent gun transfers to persons who are prohibited from possession guns. (Def. L.R. 56.1 ¶ 15.) The form requires a prospective purchaser to disclose his name, sex, height, weight, race, address, date of birth, and place or birth. The buyer must next answer a series of questions to help the gun dealer determine whether it may legally transfer a gun to that prospective buyer. The Gun Control Act makes it unlawful for dealers
(continued...)

a bound book recording the acquisition and disposition of firearms in and out of its inventory[3], as required by 27 C.F.R. § 178.125(e).

In 1977, an ATF inspector found numerous omissions and incomplete answers on the Forms 4473 he reviewed at Breit & Johnson. In some cases Breit & Johnson's forms failed to identify the purchaser's date of birth, place or birth, address and other identifying information. In other cases, Breit & Johnson failed to obtain sufficient answers to the certification section of the form to determine if the purchaser was permitted to purchase a firearm. (Def. L.R. 56.1 ¶ 17.) The 1977 inspection also revealed that Breit & Johnson was not properly recording in its bound book the acquisition and disposition of firearms purchased by Breit & Johnson. (*Id.* ¶ 18.) The ATF inspection report noted that Breit & Johnson had begun to address this problem by conducting a physical inventory, closing out entries, reconciling double entries and beginning new records utilizing a proper accounting system. (Pl. Stat. of Add'l Facts ¶ 13.) However, the inspection report stated,

> Although the dealer has corrected the majority of the violations listed above and has nearly completed the reconciliation of his bound book records, I find these discrepancies are serious and future compliance is vital to the accuracy of the recordkeeping system. Those violations pertaining to the bound book records

---

[2](...continued)
to sell guns to (1) persons under indictment for a felony, (2) fugitives from justice, (3) illegal drug users, (4) persons adjudicated mentally defective, (5) illegal aliens, (6) persons dishonorably discharged from the armed forces, (7) persons who have renounced their U.S. citizenship. (8) persons subject to domestic restraining orders, or (9) those convicted of domestic violence. 18 U.S.C. § 922(d). Form 4473 contains a section for the buyer to answer questions pertaining to each of these categories and to certify his answers.

[3]A licensed gun dealer must also maintain a bound book with entries identifying each gun it takes into its inventory and entries for each gun that leaves its inventory. Acquisition entries must identify the gun (by manufacturer, model, serial number, type and caliber or gauge), the date the licensee received the gun, and the identity of the person who transferred the gun to the licensee. Disposition entries must include this same information plus the date the gun was transferred out of the licensee's inventory, the identity of the person taking possession of the gun, and the address of that person or the Form 4473 serial number associated with the transfer. 27 C.F.R. § 178.125(e).

> have been noted previously but the licensee, prior to this inspection, has failed to
> take corrective action. Therefore, I recommend that an admonitory letter, strongly
> outlining possible consequences of future noncompliance, be sent to this licensee
> to further emphasize the importance of accurate records.

(Scouffas Decl., Ex. 1, at 65.) The ATF inspector certified that he explained all of the violations to Breit & Johnson and left the original notice of the violations with the store. (Def. L.R. 56.1 ¶ 19.) Following the 1977 inspection, ATF held a warning conference with Breit & Johnson to discuss the violations found at the inspection. ATF explained the necessity that Breit & Johnson adhere to ATF's record-keeping requirements. (*Id.* ¶ 20.)

At a 1978 inspection, ATF found some of the same types of violations it had found the year before. (*Id.* ¶ 21.) The 1978 inspection revealed four occasions when Breit & Johnson had transferred guns despite the fact that purchasers had not fully completed the certification questions on Form 4473. In one case, the form indicated that Breit & Johnson transferred a gun to someone who had answered one of the certification questions affirmatively, indicating that the person was not entitled to possess a firearm. (*Id.* ¶ 22.) ATF also found violations concerning the acquisition and disposition record-keeping requirements. Notably, Breit & Johnson had failed to record the fact that two firearms had been stolen. It was also not recording firearms brought in for repairs. (*Id.* ¶ 23.) At the time, ATF did not find these violations to be significant enough to recommend revocation of Breit & Johnson's license. The inspection report noted that

> the incidence of error on Forms 4473 in comparison to the total number of forms
> completed by Mr. Breit during the period of investigation is insignificant. The
> licensee was cited to remind him that incomplete Forms 4473 are a violation of
> federal law and that he should strive for as near perfection as possible. He was
> then asked to contact the individuals and have the forms completed. Forms 4473
> on a whole were found to be complete and in order. The incomplete entries (such
> as p/o/b, d/o/b, and address) for which Mr. Breit was cited last year did not
> reappear.

(Pl. Stat. of Add'l Facts ¶ 16; Scouffas Decl., Ex. 3, at 109.) The report also noted that "on the whole, the licensee is properly recording the acquisition and disposition of all firearms." The report stated that "the percentage of error in comparison to the total volume of sales, however, is minimal." Finally, the report found that "on the whole, the licensee's records were found to be complete and in order" and recommended renewal of Breit & Johnson's firearms license. (Pl. Stat. of Add'l Facts ¶ 16.) Sid Breit signed the notice of violations indicating that he had received a copy and that the inspector had explained the violations to him. (Def. L.R. 56.1 ¶ 25.)

ATF inspected Breit & Johnson in 1989 and found no violations. (Def. Resp. to Pl. Stat. of Add'l Facts ¶ 21.)

In 1994, ATF again conducted a full compliance inspection of Breit & Johnson. The inspector found discrepancies in over ten percent of the Forms 4473 she reviewed (402 of 3900 forms reviewed). This included 363 instances where Breit & Johnson had not obtained the complete identifying information from the purchasers and 16 instances where Breit & Johnson transferred firearms without requiring purchasers to provide a complete certification that they were not prohibited from possessing firearms. (Def. L.R. 56.1 ¶ 27.) The 1994 inspection also revealed that Breit & Johnson had failed to record guns received for repairs in its acquisition and disposition records and that it had not consistently recorded the addresses and license numbers for the suppliers of its guns. (*Id.* ¶ 28.) The 1994 inspector also cited a violation relating to the requirement that gun dealers report multiple handgun sales to both federal and state authorities using ATF Form 3310.4. Although Breit & Johnson was sending the reports to the proper authorities, it was doing so prior to, rather than at the time of, the actual transfer of the guns. (*Id.*

¶ 29.) Sid Breit's son, Alan Breit, received the 1994 notice of violations and acknowledged that the violations had been explained to him. (*Id.* ¶ 30.)

Because ATF found "three serious recordkeeping violations" and because "two of the violations were repeats from previous inspections," the inspector recommended a warning conference. (Scouffas Decl., Ex. 5, at 216.) ATF held the warning conference with Breit & Johnson on November 9, 1994. Sid Breit and his sons Mark and Alan Breit each attended the conference. (Def. L.R. 56.1 ¶ 31.) Following the conference, ATF sent Breit & Johnson a letter stating

> A recent inspection of your firearms operations disclosed some serious recordkeeping and conduct of business violations. . . . Most notable were violations pertaining to the completion of Forms 4473 and improper maintenance of your Acquisition and Disposition records. Area Supervisor Scouffas emphasized the importance of accurate and complete records. You stated that corrective actions had been taken and that you are now in compliance with Federal laws and regulations.
> I appreciate your cooperative attitude. Accordingly, I have decided to renew your license. You are encouraged to continue to implement internal controls to ensure future compliance.
> You are warned, however, that should subsequent inspections disclose similar violations, your license may be revoked.

(Scouffas Decl., Ex. 7, at 432.)

At the next full compliance inspection in 1998, the ATF inspector again found numerous violations, including 38 violations of the requirements pertaining to Form 4473. (Def. L.R. 56.1 ¶ 32-33.) Twenty-two forms that had been personally signed by Mark or Sid Breit lacked complete certifications from purchasers. On fifteen forms, the dates on the forms did not indicate that the certification was completed at the time of the transfer of the firearm or left the date of the actual transfer ambiguous. Forms signed by Mark Breit indicated that Breit &

Johnson had transferred firearms to three persons whose certifications indicated that they were prohibited from possessing firearms, two who indicated that they were illegal aliens and one who admitted to being subject to a protective order restraining him from harassing, stalking, or threatening an intimate partner or child of such partner. (*Id.* ¶ 34; Scouffas Decl., Ex. 10, at 39-94.) A review of Breit & Johnson's acquisition and disposition records also revealed discrepancies regarding approximately 2000 firearms acquired but for which there was no noted disposition. (*Id.* ¶ 35.) Lastly, the 1998 inspection revealed that Breit & Johnson was not properly reporting the sale of multiple handguns to state or local law enforcement agencies even though the forms for such reports contain clear instructions indicating that requirement. (*Id.* ¶ 36.) The ATF inspector recommended a warning conference "with the results of the conference being the basis for future action on the license." (Pl. Stat. of Add'l Facts ¶ 40; Scouffas Decl., Ex. 8, at 489.)

Mark Breit admits to these violations. (Def. L.R. 56.1 ¶ 37.) He also admits that he knew, at least as early as 1977, that it was important for firearms dealers to ensure that Forms 4473 are filled out completely and accurately, in his words, "to prevent an individual from purchasing a weapon that shouldn't be purchasing a weapon, he's implicating himself or perjuring himself if he was to put an answer in that was false." (*Id.* ¶ 38.) However, he also claims not to have known how important it was to ensure that Forms 4473 are fully completed. (*Id.* ¶ 39.) Mark Breit indicated to the ATF inspector that he would insure proper completion of Forms 4473 in the future. (Pl. Stat. of Add'l Facts ¶ 45.)

On February 23, 1999, ATF Area Supervisor Michael Fitzgerald recommended that the ATF begin proceedings to revoke the Federal Firearms license of Breit & Johnson. Fitzgerald noted,

> Utilizing Crime Gun Analysis in support of illegal gun trafficking prevention, [Breit & Johnson] is identified, with one exception, as having more recovered guns by law enforcement agencies traced back to it than any other dealer in the State of Illinois. . . . The licensee has a history of serious repetitive violations of the GCA. Previous admonitory warning conferences with [Breit & Johnson] reinforcing the need for better adherence to firearms laws and regulation have been held. Another warning conference to review the numerous violations found during the latest inspection would be just that . . . a review.

(*Id.* ¶ 48; Scouffas Decl., Ex. 8, at 490-91.) On July 8, 1999, ATF issued Breit & Johnson a Notice of Revocation of License. (*Id.* ¶ 40.) The notice stated,

> On numerous occasions between January 3, 1998 and October 31, 1998 you sold and transferred a firearm to an unlicenced person without requiring such person to fully complete and/or properly execute a firearms transaction record (ATF Form 4473). On each of these occasions, you willfully violated 18 USC Sections 922(m), 923(g), and 27 CFR Section 178.124(a), 178.124(c).
>
> On numerous occasions between January 3, 1998 and October 31, 1990, you sold and transferred two or more handguns within a five day period to an unlicensed person, and failed to submit a copy of ATF Form 3310.4 report of multiple sale, to the Illinois State Police or to thr appropriate law enforcement agency. On each of these occasions, you willfully violated 18 USC Section 922(m), 923(g)(3)A, and 27 CFR Section 178.126a.

(Pl. Stat. of Add'l Facts ¶ 48.) Breit & Johnson requested a hearing. (*Id.* ¶ 41.) ATF appointed a hearing officer and provided Breit & Johnson with a hearing. (*Id.* ¶ 42.)

After the hearing, ATF Hearing Officer Joseph McGurk noted,

> During the hearing Atty. Landes and Mark Breit referred to records he had brought from the business showing corrections have been made. The bound book has been streamlined and updated with all firearms reportedly accounted for. Multiple sales forms have been prepared for all of the transactions not properly distributed in the past. I had S/A Bennett do a cursory examination of the

9

multiple sales forms. His examination disclosed that Mark Breit is forwarding the
wrong copy of the multiple sales form to Local Law Enforcement but more
importantly, the forms are being forwarded. The bound book record was not
examined. As I stated in my summary, I believe ATF has been fair in trying to
gain the licensee's compliance, with little luck. However, a concern of mine is
the amount of time elapsed since the licensee was first notified that their FFL was
being revoked. If ATF can establish that the licensee has been truly in compliance
with federal laws and regulations since January 1999, then ATF has been
successful in getting the licensee into compliance and may want to consider
another course of action.

(Scouffas Decl., Ex. 10, at 36.)

Nevertheless, Hearing Officer McGurk recommended that Breit & Johnson's Federal Firearms License be revoked "[d]ue to the licensee's history of continued non-compliance with federal laws and regulations." (Def. L.R. 56.1 ¶ 43.) The hearing officer noted that the 1998 inspection revealed "that the licensee continues to repeat the same violations, . . . [that][t]he violations continue to be of a serious nature and too numerous to expect future compliance . . . [and that][t]he licensee has been afforded the opportunity to appear at two warning conferences to discuss their violations, neither of which appears to have been sufficient to gain their compliance." (*Id.* ¶ 44.) Nicholas Scouffas, the Chicago Area Supervisor for ATF, testified that ATF rarely allows a licensee two warning conferences before proceeding to revoke the licensee's license. (*Id.* ¶ 45.)

On October 17, 2001, ATF's Director of Industry Operations issued his Final Notice of Revocation. (*Id.* ¶ 46.) Breit & Johnson filed a timely complaint with this court seeking to reverse ATF's decision. (*Id.* ¶ 47.)

ATF inspector Mary Ann Gude testified that she finds violations in "about half" of the inspections she conducts. (Pl. Stat. of Add'l Facts ¶ 10.) ATF never informed Breit & Johnson

10

that a single error or omission on a single Form 4473 could constitute grounds for the revocation of its license. (*Id.* ¶ 11.)

**Discussion**

ATF is authorized to revoke a gun dealer's license "if the holder of such license has willfully violated any provision of [the Gun Control Act] . . ., or any rule or regulation prescribed" under the Act. 18 U.S.C. § 923(e). "Any single violation of the federal statutes or regulations controlling the firearms industry can be a basis for denying an application for a new license or revoking an existing license." *Trader Vic's Ltd.* v. *O'Neill*, 169 F. Supp. 2d 957, 963 (N.D. Ind. 2001)(quoting *DiMartino* v. *Buckles*, 129 F. Supp. 2d 824, 832 (D. Md. 2001), *aff'd, by unpublished order DiMartino* v. *Buckley*, No. 01-1166, 2001 WL 1127288 (4th Cir. Sept. 25, 2001)). Breit & Johnson admits that it violated ATF's record-keeping provisions in 1998. Thus, the only substantial issue for the court to decide is whether these violations were "willful."

A violation is "willful" for purposes of section 923(e) if the dealer "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements." *Stein's*, 649 F.2d at 467 (quoting *Lewin* v. *Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979)). Evidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness. *Id.* at 468; *accord, Trader Vic's*, 169 F.Supp.2d at 957, 960 ("a federal firearms licensee . . . [has] a duty to be cognizant of the rules and regulations issued by the Bureau of Alcohol, Tobacco, and Firearms and to follow those mandates."); *Cisewski* v. *Dept. of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 773 F.Supp. 148 (E.D. Wis. 1991)(repeat violations after warnings establishes "willful" violations). Bad purpose or evil motive is not necessary to establish willfulness. *Stein's*, 649 F.2d at 467.

11

Breit & Johnson admit that ATF compliance inspections in 1977, 1978, and 1994 revealed violations of the record-keeping requirements promulgated under the Gun Control Act. It admits that many of these were repeat violation. It admits that after each inspection ATF explained the violations and stressed the importance of compliance. It admits that ATF held warning conferences with Breit & Johnson in 1977 and 1994. Nevertheless, the 1998 ATF inspection revealed more violations. This history of repeated violations and multiple warnings is sufficient to establish that Breit & Johnson willfully violated ATF's record-keeping requirements in 1998.

In *Stein's*, the Seventh Circuit affirmed the district's court's decision granting summary judgment in favor of ATF on strikingly similar facts. The plaintiff's corporate officer in *Stein's* admitted to repeated record-keeping violations. He "attributed them to employee error, and generally denied that the violations were willful." *Id.* at 464. He testified that "most of the violations were technical requirements and promised that measures had and would continue to be taken to ensure that the violations would not occur." *Id.* Although the hearing officer presiding over the administrative hearing recommended that the plaintiff's license be renewed, ATF denied the license. The district court granted summary judgment in favor of ATF.

Affirming the district court's decision, the Seventh Circuit noted that ATF had explained the record-keeping requirements to the plaintiff's employees at the time it found prior violations. *Id.* at 468, n. 8. ATF had also warned the plaintiff that future violations could result in the loss of its license. Yet, the "record showed a persistent pattern of violations even after warnings from the Secretary." *Id.* at 468. From this evidence, the court concluded that "the inference that the

violations were willful is compelling, notwithstanding the plaintiff's protestations to the contrary." *Id.* The same is true in the instant case.

Breit & Johnson argues, however, that the court should not consider its history of violations and warnings but should instead "confine the inquiry to the alleged 1998 form 4473 and multiple sales form violations. The events which occurred prior to 1998 . . . should not be part of the proceedings on behalf of the government." (Pl. Resp. to Def. Mot. for Summ. J., at 5.) It supports this argument with an appeal to fairness -- "It is not fair to dredge up ancient history and expect the licensee to recall and defend against events which occurred in the distant past in defense of its license . . ." (*Id.*) -- and by pointing out that the Notice of Revocation only alleged events that occurred in 1998. (*Id.* at 9-10.) Breit & Johnson apparently misunderstands the evidentiary significance of the prior violations. The violations alleged in the Notice of Revocation occurred in 1998. These violations are the basis for ATF's revocation of Breit & Johnson's license. Evidence of the previous violations establish that Breit & Johnson knew what the law required of it when it committed the 1998 violations. Thus, these earlier violations were properly considered by ATF and may be considered by this court.

Breit & Johnson next argues that ATF's Notice of Revocation did not sufficiently specify the details regarding the 1998 violations. 27 C.F.R. § 178.73 provides that a notice of revocation must "set forth the matters of fact constituting the violations specified, dates, places and the section of law and regulations violated." The Notice of Revocation did not specify the matters of fact constituting each individual violation. It stated only that violations occurred "on numerous occasions between January 3, 1998 and October 31, 1998," generally described the violations, and cited the section of the law and regulations violated. However, well in advance of the ATF

13

hearing, ATF gave Breit & Johnson's attorney a copy of all the allegedly violative ATF forms. Those forms indicated the date, place, and nature of each of the violations. This was sufficient to put Breit & Johnson on notice of the charges against it. The Seventh Circuit has held that ambiguities and generalizations in administrative pleadings "may be clarified by subsequent pleadings and discussions" between the parties. *Brock* v. *Dow Chemical U.S.A.*, 801 F.2d 926, 930 (7th Cir. 1986). Furthermore, Breit & Johnson has failed to offer any evidence showing that it was prejudiced by the lack of specificity in the Notice of Revocation. *See id.* (Unless the party in an administrative proceeding alleging lack of notice "demonstrates that the lack of formal notice was prejudicial, we will not order that the charges be dismissed.").

Breit & Johnson also complain that ATF served the Notice of Revocation on Breit & Johnson on July 8, 1999, though the Notice specified that it was effective on July 7, 1999. However, Breit & Johnson have failed to allege any prejudice as a result of this one-day discrepancy. In fact, it admits that ATF has allowed it to remain licensed pending the outcome of the administrative and judicial review of its revocation. Thus, Breit & Johnson cannot prevent summary judgment with this argument.

Finally, Breit & Johnson contends that ATF "should be estopped" from revoking its license now because ATF exercised its discretion not to revoke the gun dealer's license for past violations. Breit & Johnson claims that it "relied upon the standards of inspection used by ATF in the past" and that it was led to believe that a certain minimal number of violations was acceptable. A party asserting estoppel against the government "must carry a heavy burden to outweigh the strong, countervailing interest in obedience to the law." *US* v. *McGaughey*,

977 F.2d 1067, 1073-74 (7th Cir. 1992). It must show "affirmative misconduct" by the government, in addition to the traditional elements of estoppel:

> First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury.

*Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir. 1982).

Breit & Johnson cannot satisfy these elements. It has failed to allege any affirmative misconduct by ATF or its agents. Moreover, ATF held two warning conferences with Breit & Johnson explaining the importance of full compliance with ATF's record-keeping requirements. ATF specifically told Breit & Johnson in 1994 that "should subsequent inspections disclose similar violations, your license may be revoked." Thus, Breit & Johnson cannot claim that it had come to rely on ATF's clemency and was ignorant of the possibility that ATF would revoke its license if it found further violations.

## Conclusion

For the foregoing reasons the court finds that the Attorney General's decision to revoke Breit & Johnson's license to sell firearms was authorized and therefore grants the Attorney General's motion for summary judgment (#12). This case is terminated.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 17, 2004

15